**AFFIDAVIT FOR COMPLAINT**

I, Clyde Parsons, a Special Agent with the Department of State, Diplomatic Security Service ("DSS"), having been duly sworn, depose and state as follows:

**Introduction**

1. I make this affidavit in support of a complaint charging Daxesh Patel and Dharmesh Patel with Fraud and Misuse of Visas, in violation of Title 18, United States Code, Section 1546 and Conspiracy to Defraud the United States, in violation of Title 18, United States Code, Section 371.

2. I have been a Special Agent with the Department of State (DOS), Diplomatic Security Service (DDS) since 2003. I am currently assigned to the Criminal Investigations Division, Visa Fraud (VF) Branch. I have training and experience in the enforcement of laws of the United States, including the preparation, presentation, and service of criminal complaints and arrest and search warrants. My responsibilities include conducting investigations into criminal violations of the laws governing the issuance and use of United States visas and passports. Prior to this experience, I was an Investigator for the Department of Defense for approximately two years, where I conducted Background Investigations for the US Military and Department of Defense

1

Contractors.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a complaint charging Daxesh Patel and Dharmesh Patel with Fraud and Misuse of Visas, in violation of Title 18, United States Code, Section 1546 and Conspiracy to Defraud the United States, in violation of Title 18, United States Code, Section 371, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause to establish that Daxesh Patel and Dharmesh Patel have committed Fraud and Misuse of Visas, in violation of Title 18, United States Code, Section 1546 and Conspiracy to Defraud the United States, in violation of Title 18, United States Code, Section 371. The information contained in this affidavit is based upon investigation conducted by myself and other law enforcement officers.

### Initiation of the Investigation in India

4. On January 3, 2007, the U.S. Embassy Mumbai contacted the Bureau of Diplomatic Security Service (DSS), Visa Fraud Unit, Washington, DC, requesting an investigation of an individual who is an employee of the Department of Homeland Security (DHS), Citizenship and Immigration Services (CIS). Consular Officials at

the U.S. Embassy Mumbai reported than an individual named "Hashukh Chandrakant Patel" (hereinafter referred to as HPatel) entered the U.S. Embassy Mumbai on December 13, 2006, and requested to speak with a Consular Officer. HPatel identified himself as a DHS CIS Adjudications Officer from Atlanta, Georgia, and stated that he had filed an H2B Visa for two Indian foreign nationals (herein identified as Couple 2). HPatel advised that his wife Nitigna Patel (hereinafter referred to as NPatel) was ill and in need of domestic help due to her poor physical condition. HPatel asked the Consular Officer to take this information into consideration when Couple 2 was interviewed for their visas and asked that he assist with the processing of Couple 2's visa petition.

5. After the Consular Officer asked a member of his staff to assist HPatel with Couple 2's visa petition, the staff member informed the Consular Officer that in approximately February 2006, a similar situation occurred where an individual by the name of "Hashukh Patel" had telephonically asked for "professional courtesy" during the petition of a two other Indian nationals (herein identified as Couple 1 Husband and Couple 1 Wife to protect their identities because they are cooperating with the ongoing investigation). The two cases were then examined and compared by Consular officials and it was determined that HPatel had petitioned for both Couple 1 and Couple 2. Consular Officials then attempted

3

to contact Couple 1 who had entered the U.S. in February 2006, and discovered that Couple 1 had never returned to India as normally required by a H2B visa. Consular Officials became suspicious and set up an appointment to interview Couple 2 at the U.S. Embassy in Mumbai, India. DSS Personnel also re-interviewed HPatel in Mumbai regarding Couple 2's visa petition. HPatel provided Consular Officials paperwork indicating that NPatel was in need of a physical caregiver due to a recent stroke. When questioned regarding the whereabouts of Couple 1, HPatel stated he did not know where they were located and claimed that Couple 1 Wife had worked for his wife up until August of 2006 and because of Couple 1 Wife's departure NPatel was now in need of additional domestic help. Consular Officials determined that HPatel was being elusive and misleading during their questioning. HPatel left the Consulate and Couple 2 were denied their visas.

**Subsequent Investigation in the United States**

6. Commercial and law enforcement database checks conducted by DS/CR/VF revealed an apparent address for Couple 1 Wife and Couple 1 Husband at an address in Georgia more than 200 miles from their alleged place of employment at the residence of HPATEL at 1544 Chambers Road, McDonough, Georgia.

7. A check of DHS databases revealed that shortly after arrival in the US, Couple 1 Husband applied for and was granted an adjustment of immigration status from H-4 (dependant of H2B) to L1A (inter-company transferee). The beneficiary of an L1A non-immigrant visa must demonstrate that he or she has been employed overseas by the transferring organization for at least one year within the past three years and that he or she will be performing duties in the United States for the same employer, a subsidiary, or affiliate. The petitioning organization listed for Couple 1 Husband's adjustment of status was AXAR Systems; an information technology firm located in Duluth, Georgia. When Couple 1 Husband listed his occupation/profession on his February 2006 non-immigrant petition as a farmer/social worker, Couple 1 Husband made no mention of any qualifications, training, or current employment in information technology or specifically with AXAR Systems, at a location in India or elsewhere overseas.

8. On March 5, 2007 Agents interviewed Dharmesh Patel, Computer Programmer and Office Manager, Axar Systems. This interview took place at the Axar Systems office.

9. During the March 5, 2007, interview with Dharmesh Patel, he stated that he was unable to provide Agents with the information they requested without the approval of Daxesh Patel. He stated

5

that he was the only Axar employee in the building. Dharmesh Patel then called Daxesh Patel, who was traveling in India. Daxesh Patel told Agents that he was the President of Axar Systems and that he would be willing to cooperate. He provided the contact information for Pierre Neely, Human Resources Manager. Dharmesh Patel was unable to provide a full list of employees to the Agents. Agents believe that Dharmesh Patel was stalling and uncooperative with them in regard to producing the requested documents.

10. On March 5, 2007, Agents interviewed Pierre Neely who identified himself as the Human Resources Manager for Axar Systems. Neely stated he had been at Axar since 2005 and that his duties included determining if people were good fit for IT work. He stated that Axar has approximately seven or eight employees and that he was unaware if Couple 1 Husband worked for Axar. He stated that Couple 1 Husband does not supervise three people, as described in the L1A petition submitted by Axar. Neely stated further that Daxesh Patel recruited the Axar personnel. He was shown a petition for an L1A visa application in the name of Couple 1 Husband bearing the signature of Pierre Neely. Neely stated that this signature was not his and that he had provided Daxesh Patel power of attorney to sign his name on legal documents. This power of attorney was maintained at Dixit and Youn law firm LLP, Alpharetta, GA. Daxesh Patel had already provided Agents with the name of this law firm as

Axar Systems attorney.

11. On March 5, 2007, Agents interviewed Neera A. Bahl, attorney for Dixit and Youn, who represents Axar Systems in both H and L Visa Applications to CIS. During the interview Bahl contacted Parmesh Dixit via telephone and he stated that Daxesh Patel signs for Pierre Neely and that they have a long working relationship together. Parmesh Dixit also stated that Daxesh Patel leaves the office with legal documents and returns them signed.

12. DSS contacted DHS, Citizenship and Immigration Services (CIS), Fraud Detection and National Security (FDNS) unit located at the DHS Texas Service Center and requested assistance concerning possible visa fraud and misrepresentation being effected at Department of State (DOS) visa-issuing posts abroad by a petitioning entity named Axar Systems. A search was conducted of the DHS CLAIMS database, which tracks both immigrant and non-immigrant U.S. visa petitions. The search was for all individuals, companies, and addresses associated with Axar Systems. The search revealed that Axar Systems submitted visa petitions requesting H1B benefits and L1A benefits on behalf of approximately 100 aliens from India. According to the DHS CLAIMS database, Axar Systems is a Georgia for profit-corporation; the principal officer of which is Daxesh Patel.

13. On March 6, 2007, Couple 1 Husband was interviewed by DSS and DHS OIG agents. Couple 1 Husband initially was untruthful but later admitted in a sworn statement that his brother paid HPatel $100,000 cash and $4,000 by check to get Couple 1 Husband and Couple 1 Wife to the US. Couple 1 Husband's brother and Couple 1 Husband later obtained counsel and entered into a proffer agreement with the US Government. Couple 1 Husband's brother stated that his understanding was that HPatel was giving the money to someone to prepare the documents. It was not until he paid the full amount did he discover that HPatel was actually a DHS employee and he was keeping the money. Couple 1 Husband stated that they entered the US and immediately went to his brother's home in Georgia. Couple 1 Husband assisted his brother in his business.

14. Couple 1 Husband discovered that his visa was temporary so he contacted an individual from his village in India named Daxesh Patel, who owned a company named Axar Systems. Couple 1 Husband met with Daxesh Patel who then took him to a law firm where he spoke to an attorney named Churu. Churu assured him that he would take care of everything. Couple 1 Husband was informed by Daxesh Patel that he received an L1A Visa. Couple 1 Husband stated that he was told by Daxesh Patel that there was a $15,000 fee. Couple 1 Husband paid the fee and received the L1A visa but does not work at Axar Systems as is required under the terms of the L1A visa

issued to him. In fact, Couple 1 Husband stated that he does not work.

15. Couple 1 Husband stated that he receives a paycheck from Axar Systems, cashes the check and then gives the money to Daxesh Patel to make it appear that he is working there. Couple 1 Husband stated that Daxesh Patel told him to do this in order to keep his legal status in the US. Couple 1 Husband stated that he does not know the number of persons employed by Axar Systems or whether Daxesh Patel is doing this fraud for anyone else.

16. Affiant has also reviewed transcripts of consensually recorded meetings between Couple 1 Husband, Dharmesh Patel and Daxesh Patel. On June 13, 2007, Couple 1 Husband placed a consensually monitored call to Dharmesh Patel. This conversation was to set to occur at a time when Couple 1 Husband was scheduled to pay Dharmesh Patel his monthly fee so that he would receive an Axar Systems payroll check. Dharmesh Patel told Couple 1 Husband that he owed for three months and that he owed Daxesh Patel approximately $15,000.00. Dharmesh Patel told Couple 1 Husband that he could drop the money at the Axar Office located at 2763 Meadow Church Road, Duluth, GA.

17. On June 14, 2007, there was a meeting between Couple 1 Husband and Dharmesh Patel in the Axar Office located at 2763 Meadow Church

Road, Duluth, GA. Couple 1 Husband discussed a payment of $14,490.00 to keep Couple 1 Husband's immigration status legal, specifically by AXAR Systems to continue to maintain Couple 1 Husband on the AXAR payroll. Couple 1 Husband gave Dharmesh Patel a bank check in the amount of 10,000.00. Dharmesh Patel instructed Couple 1 Husband on how to make the payments in the future and specifically detailed the amounts and denominations to withdraw from financial institutions to avoid potential scrutiny from bank personnel. Couple 1 Husband was told by Dharmesh Patel that he owed an additional $4,490.00. Couple 1 Husband stated that he had to go and get it from the bank. Couple 1 Husband left and returned moments later and paid the $4490.00 in cash. Couple 1 Husband and Dharmesh Patel agreed that Couple 1 Husband would continue receiving payroll checks. The purpose of the payroll checks was to provide a paper trail for use by Couple 1 Husband in supporting the legitimacy of his employment with AXAR Systems and thus remain within the status of his employment based work visa. The funds utilized by AXAR Systems to pay Couple 1 Husband as "payroll" would come from Couple 1 Husband and be moved through AXAR System's financial accounts. During the meeting, Dharmesh Patel provided Couple 1 Husband a payroll printout which purported to show Couple 1 Husband's employment with AXAR Systems. The funds for the $14,490.00 payment was provided by the US Government.

18.  On June 14, 2007, during the meeting between Couple 1 Husband and Dharmesh Patel, Dharmesh Patel placed a call to Daxesh Patel. Couple 1 Husband then talked to Daxesh Patel. During that call Daxesh Patel told Couple 1 Husband to meet him at a nearby location. This meeting took place between Couple 1 Husband and Daxesh Patel in a parking lot near the Axar Systems office. During the meeting, Daxesh Patel and Couple 1 Husband discussed the documents and information which would need to be presented to the U.S. Government for the purpose of maintaining Couple 1 Husband's continued legal presence in the U.S. Daxesh Patel stated that despite advice from his attorney he was going to continue to keep Couple 1 Husband on the AXAR Systems payroll. Daxesh Patel also discussed the manner in which the L1A visa petition was created and the importance of making it appear that Couple 1 Husband is employed by Axar Systems. Daxesh Patel and Couple 1 Husband discussed previous interviews with federal agents and identified potential weaknesses in their story. Daxesh Patel advised Couple 1 Husband to provide only payroll documents to federal agents if approached in the future and coached Couple 1 Husband on how to answer questions posed by federal agents.